No. 8514.

GREENEWALD v. RATHFON.

CONTRACT.—*Partnership.—Fraud.—Receiver.—Complaint.—Verdict.—Judgment.
—Excessive Damages.—Vendor and Purchaser.*—Complaint in two para-
graphs, alleging fraudulent representations whereby the plaintiff was
induced to purchase for $1,281 an interest in the property, machinery and
trade of a factory worth only $800, and become a partner. One paragraph
prayed damages, the cancellation of a note given for part of the pur-
chase-money, and for general relief; the other added a prayer to annul
the contract. The verdict found for the plaintiff damages in the sum
which had been paid, and that the note be cancelled, but was silent as
to annulling the contract.
*Held,* that the complaint was good on demurrer.
*Held,* also, that the damages were excessive, since a judgment in accor-
dance with the verdict would leave the plaintiff owner of the property
bought.

From the Cass Superior Court.

*F. Swigart,* for appellant.
*M. Winfield* and *Q. A. Myers,* for appellee.

NEWCOMB, C.—The appellee filed a complaint of two para-
graphs against the appellant. The averments of each para-
graph were similar, with one exception, and were to the effect
that the appellant was engaged in the business of manufactur-
ing cigar boxes in the city of Logansport, and that to induce
appellee to purchase one-half of the stock in trade and ma-
chinery of said manufactory, and to become an equal partner
with appellant in said business, the appellant made to appellee
certain false and fraudulent representations touching the profits
of said business; and that the appellee, being ignorant in the
premises and relying on said représentations as true, was
thereby induced to and did purchase from appellant one-half
of said machinery and stock in trade, for which he paid ap-
pellant $900 in money, and executed his notes for $381 addi-
tional, which were secured by a mortgage on the one-half of
the machinery so purchased. As a part of the transaction,
the parties entered into a written contract of partnership for

carrying on said box factory in the city of Logansport. This contract provided that each partner should furnish one-half of the machinery and stock of the concern, but was silent in regard to said purchase by appellee from the appellant.

It was further averred, that the plaintiff, under the terms of the partnership agreement, went into the box factory and engaged in the manual labor of manufacturing cigar boxes; that he worked therein faithfully for a period of three and one-half months; that during all that period he was able to draw from the proceeds of said business only $11 for the support of his family; that said business was not profitable, but, on the contrary, was a losing business, and was such before plaintiff became such partner; that the representations, so made by the defendant to induce the plaintiff to make said purchase and enter into said contract of partnership, were known by the defendant to be false when he made them, and that they were made for the fraudulent purpose of cheating and defrauding the plaintiff; that, after so working for three and one-half months, plaintiff informed the defendant that he, plaintiff, must abandon the box factory and seek work elsewhere, by which he could support his family, to which defendant assented, and plaintiff did leave and seek employment elsewhere, leaving the machinery and other property of the partnership in possession of the defendant, who continuously thereafter held possession and enjoyed the same.

The first paragraph further charged that said stock and machinery were not, in fact, worth more than fifteen or sixteen hundred dollars, instead of $2,462, at which rate plaintiff paid for one-half thereof, in consequence of such fraudulent representations of the defendant.

The prayer of the first paragraph of the complaint was for a dissolution of the partnership, for one thousand dollars damages, the cancellation of said notes for $381, for the rent of the premises and machinery subsequent to September 4th, 1877; that a receiver be appointed to wind up the concern, and for all proper relief. The prayer of the second paragraph

was, that the contract of partnership be declared null and void; that the defendant be compelled to surrender for cancellation said notes and mortgage, and be enjoined from transferring the same; that plaintiff recover back the money so paid to defendant, with interest, and for all other proper relief.

The court denied the application for the appointment of a receiver.

Demurrers to the separate paragraphs of the complaint were properly overruled; each contained facts sufficient at least to authorize a recovery of such damages as the plaintiff could show he had sustained by the alleged fraud of the defendant.

Issues of fact being joined, the cause was submitted to a jury, who returned the following verdict:

" We, the jury, find for the plaintiff, and assess his damages at ($979.90) nine hundred and seventy-nine dollars and ninety cents; and we do further find that the notes and mortgage executed by plaintiff to defendant, bearing date May 15th, 1877, and June 5th, 1877, and described in the complaint and cross complaint, should be surrendered and cancelled.

"SAMUEL H. SUELL, Foreman."

The defendant moved for a new trial, and among the causes therefor was the following: " The damages assessed by the jury are excessive."

We think this objection to the verdict was well taken. The jury allowed the entire sum the plaintiff had paid in money, with interest thereon, and also found that the defendant should deliver up the plaintiff's notes and mortgage, thus placing the plaintiff in the most favorable attitude he could occupy, if he had rescinded the contracts of purchase and partnership on the ground of fraud. But no rescission, or attempt at rescission, was averred or proved; on the contrary, the complaint itself recognized the partnership as still existing, and prayed for its dissolution, and the appointment of a receiver. So far as appears from the record, the plaintiff, after this verdict and judgment, was still the owner of one-half the machinery, yet without doing anything to divest himself of such ownership,

and transfer it to the defendant, the plaintiff recovered the full price paid for it, with interest.

On the trial the defendant, Greenewald, testified that about two weeks after plaintiff left the factory, they agreed upon a dissolution of the partnership; that Rathfon invoiced the stock, and Greenewald took it at said invoice, and agreed to pay the debts of the partnership, and to pay Rathfon $50 per year for the rent of the machinery, and to pay building association dues of $6.75 per month for Rathfon, which he had continued to do since the dissolution.

No witness contradicted this testimony of the defendant touching a dissolution of the partnership and its terms. The plaintiff was called as a witness in rebuttal, and testified as follows on this subject: "It was agreed by both parties at the time we dissolved that the contract of dissolution should be reduced to writing. McNary was to draw it up. I asked Greenewald why he had not signed the contract; said he had not signed it because it did not suit him. * * * I did not ask Greenewald to pay building association dues after suit; my requests were all made before suit was brought. I asked him to pay building association dues after he had refused to sign the contract of dissolution. The agreement to reduce the contract to writing was made some weeks after I went to the railroad shop to work. We dissolved, I think, about two weeks after I went to the shop, and I went to it as soon as I left the box factory."

The reason given by Greenewald why the contract of dissolution had not been signed was, that when they called at McNary's for that purpose, they found that the writing did not correspond with the terms of the contract of dissolution.

The machinery was valued by the different witnesses, as follows: By the plaintiff, at $1,500; by Alfred McAllister, a machinist, at $1,700 to $1,800; by Charles Knouse, also a machinist, at $1,600, and by the defendant at $2,200.

Taking the plaintiff's own testimony as the basis of value, he still had a property of $750 in the machinery, after obtain-

Greenewald v. Rathfon.

ing a verdict and judgment for the recovery of all the consideration paid for it.

This statement of the evidence on the foregoing points shows conclusively that the damages found by the jury were excessive, and that the verdict ought to have been set aside. On the complaint and proofs, if entitled to recover, the plaintiff's measure of damages, so far as the purchase of the machinery and stock in trade were concerned, was not the contract price, but the deficiency in value below the contract price, in consequence of the unprofitable character of the business.

The court erred in overruling appellant's motion for a new trial, for which cause the judgment ought to be reversed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment below be and the same is hereby reversed, at the costs of the appellee, and that said cause be remanded, with instructions to sustain the motion of the appellant for a new trial.

### ON PETITION FOR A REHEARING.

FRANKLIN, C.—Appellee, in his petition for a rehearing, insists that the court erred in holding that the damages are excessive, which was the only question presented in the case.

There appears to be a difference of opinion between appellee's counsel and the court, in relation to the nature and purport of the action. If the action is for damages only resulting from the alleged fraud of appellant, as viewed by the court, the amount of damages assessed is excessive; but if the action is to cancel and set aside the contract and partnership, on account of fraud, and place the parties *in statu quo,* and the verdict of the jury and judgment of the court have that effect, the damages would then seem to be about right, and the judgment ought not to be reversed.

The complaint consists of two paragraphs.

The first sets out the contract, partnership, and false representations, and avers that the plaintiff was damaged by the alleged fraud in the sum of $1,000; prayer for a judgment of

$1,000 damages, a dissolution of the partnership, a surrender of the notes and mortgage for cancellation, an allowance for rent of the premises since September 4th, 1877, and that a receiver be appointed to settle and wind up the concern.

This paragraph seeks alone to recover damages for the fraud, treating the contract and partnership as valid, and seeks to enforce them by having the partnership wound up and settled by a receiver.

The second paragraph of the complaint alleges the contract, partnership and fraud in a very similar manner to the first, and concludes by praying for judgment, " that the contract of partnership be declared null and void; that the defendant be compelled to surrender for cancellation said notes and mortgage, and be enjoined from transferring the same; and that he recover back the money paid, laid out and expended by him, with interest thereon, in all amounting to the sum of $1,200, and for all proper relief."

This paragraph may be considered as in harmony with appellee's theory of the object of the action. The appellant answered generally in denial, and the notes and mortgage as set-offs, and by way of cross complaint.

We must, therefore, look to the verdict and judgment to determine upon which paragraph of the complaint the plaintiff succeeded. The verdict reads as follows:

" We, the jury, find for the plaintiff, and assess his damages at ($979.90) nine hundred and seventy-nine dollars and ninety cents; and we do further find that the notes and mortgage executed by plaintiff to defendant, bearing date May 15th, 1877, and June 5th, 1877, and described in the complaint and cross complaint, should be surrendered and cancelled."

The court rendered the following judgment: " It is therefore considered and adjudged by the court, that the plaintiff do have and recover of and from the said defentant, Henry Greenewald, the sum of nine hundred and seventy-nine dollars and ninety cents, so assessed by the jury aforesaid, together

with his costs and charges herein accrued and to accrue; and it is further ordered and adjudged by the court, that the notes and mortgage described in plaintiff's complaint be declared cancelled, and that the partnership between the parties be dissolved."

This verdict of the jury and the judgment of the court follow the prayer of the first paragraph of the complaint, and not the second. We must therefore conclude that the cause was tried, and a result reached, upon the theory of the first paragraph, and not of the second paragraph of the complaint. The verdict treats the contract as in force by giving damages for the fraud and cancelling the notes and mortgage, and the judgment, in addition, treats the partnership as in existence, by declaring it dissolved.

Appellee had agreed to pay $1,281 for half of the concern in which they formed a partnership; he had paid $900, and given his notes and mortgage for the remainder. He avers in his complaint that the whole partnership property was not worth more than $1,600, and testified to the same on the trial. This judgment does not dispose of the partnership property, but leaves that as it stood before the commencement of this action. The judgment, instead of giving to appellee his damages on account of the alleged fraud, which would be the difference between what he agreed to give for the property, and what it was worth, gives to him all that he had paid, with interest, and cancels the addition that he had agreed to pay, and leaves the property purchased still belonging to him.

We think there can be no doubt about the amount of damages in this case being excessive.

There was no error in the original opinion and decision in this case.

The petition for a rehearing ought to be overruled.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the petition for a rehearing be and the same is in all things overruled, at appellee's costs.